GIBSON, DUNN & CRUTCHER LLP
MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

SARAH ZENEWICZ, SBN 258068
  szenewicz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

Attorneys for Defendant
UBS FINANCIAL SERVICES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANKIT SAHU, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UBS FINANCIAL SERVICES, INC., <br><br> Defendant. | CASE NO. 3:16-cv-04982-JSW <br><br> **DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS** <br><br> Date:  November 4, 2016 <br> Time:  9:00 a.m. <br> Location:  Courtroom 5 <br> Action Filed: August 30, 2016 |

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on November 4, 2016, at 9:00 a.m., in Courtroom 5 of the United States Courthouse at 1301 Clay Street, Oakland, California, Defendant UBS Financial Services Inc. ("Defendant") will and hereby does move the Court for an order compelling non-class arbitration and staying all proceedings in this Court pending the resolution of arbitration, or in the alternative, dismissing the proceedings pursuant to Rule 12(b)(3).  This Motion is made pursuant to Rules 12 and 16 of the Federal Rules of Civil Procedure, on the following grounds:

Plaintiff and Defendant are parties to valid and enforceable arbitration agreement that require arbitration of the claims at issue here:  "Employee and UBS agree that" "any and all claims or disputes between Employee and UBS . . . arising out of or in any way relating to Employee's employment, compensation, benefits and terms and conditions of employment with UBS . . . or the termination thereof, including but not limited to contract, tort . . . wage and hour claims . . . claims arising under or relating to . . . any other federal, state or local wage and hour, compensation, benefits, or discrimination law" "will be resolved by final and binding arbitration."  Declaration of Jane Eisland ("Eisland Decl."), Ex. A at App'x § a, b.  Pursuant to that same agreement, Plaintiff agreed that he could not initiate, maintain or have any covered claims heard on a class action basis.  *Id*. § d.  A stay of proceedings pending that arbitration is required under the Federal Arbitration Act. 9 U.S.C. § 3.  In the alternative, this Court should dismiss this case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Jane Eisland, and all papers and pleadings from this case on file with the Court, all other matters of which the Court may take judicial notice, any further evidence or argument offered to the Court at the hearing on this Motion, and any other matters that the Court may consider.

i

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

| | |
|---|---|
| Dated: September 28, 2016 | Respectfully submitted, |
| | GIBSON, DUNN & CRUTCHER LLP |
| | By: _/s/ Michele L. Maryott_<br>         Michele L. Maryott |
| | Attorneys for Defendant<br>UBS FINANCIAL SERVICES INC. |

Gibson, Dunn & Crutcher LLP

ii
DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Ankit Sahu ("Plaintiff"), a former financial advisor for Defendant UBS Financial Services Inc. ("UBS" or "Defendant"), filed this putative class action against UBS alleging a variety of wage and hour violations under the California Labor Code on behalf of himself and all other UBS financial advisors in California since August 30, 2012. But, in connection with his voluntary execution of a promissory note, Sahu agreed to pursue any employment-related claims against UBS in arbitration: "Employee and UBS agree that" "any and all claims or disputes between Employee and UBS . . . arising out of or in any way relating to Employee's employment, compensation, benefits and terms and conditions of employment with UBS . . . or the termination thereof, including but not limited to contract, tort . . . wage and hour claims . . . claims arising under or relating to . . . any other federal, state or local wage and hour, compensation, benefits, or discrimination law" "will be resolved by final and binding arbitration." Declaration of Jane Eisland ("Eisland Decl."), Ex. A at App'x A § a, b. Accordingly, and as discussed more fully below, Defendant seeks an order: (a) compelling Plaintiff to submit all claims in this action to non-class arbitration as required by the arbitration agreement (9 U.S.C. §§ 2, 4); and (b) staying all civil court proceedings pending completion of arbitration (9 U.S.C. § 3). Alternatively, because Plaintiff failed to file his claims in the proper arbitration venue, his claims should be dismissed with prejudice pursuant to Rule 12(b)(3) with directions that Plaintiff must pursue non-class arbitration of his claims in accordance with the express terms of the parties' arbitration agreement, to the extent he chooses to pursue such claims at all.

### STATEMENT OF CASE

Plaintiff Sahu worked for UBS in San Francisco as a Financial Advisor from April 15, 2011, until May 17, 2016. Eisland Decl. ¶ 4. UBS is a nationwide financial services organization providing a full range of investment services to its retail and institutional clients, including investment advisory and brokerage services. *Id*. ¶ 3. UBS provides these services across the United States in its more than 300 branch offices nationwide. *Id*. Financial advisors perform wealth management services for UBS clients, which includes assisting clients with investments in global and national securities markets. *Id*.

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-cv-04982-JSW

Financial advisors like Mr. Sahu may qualify for various annual performance-based bonuses each year, referred to as "Strategic Objective Awards" ("SOAs"). *Id*. ¶ 4. Depending upon the total amount of SOAs for which a financial advisor may qualify in a year, the SOAs can be awarded via various different vehicles. *Id*. One such vehicle is the Deferred Cash Award, pursuant to which UBS agrees (in a Deferred Cash Award Agreement) to pay the financial advisor a specific cash payment each year for six years, provided the financial advisor complies with the underlying Deferred Cash Award Agreement. *Id*. Depending on various factors, UBS offers eligible financial advisors the ability to take a cash loan ("Deferred Cash Award Loan") in an amount almost equal to the Deferred Cash Award. *Id*. ¶ 7. Not all financial advisors who are eligible to take a Deferred Cash Award Loan elect to take such a Loan. *Id*. ¶ 9. The decision of whether to take the Loan is entirely up to the financial advisor. *Id*.

On February 25, 2016, Sahu voluntarily entered into such a loan agreement with UBS, pursuant to which he agreed to repay a principal amount plus interest over a term of a six years (the "Promissory Note"). *Id*., ¶¶ 5, 8-9, Ex. A. The Promissory Note includes Sahu's agreement to an attached Arbitration and Class Action Waiver Agreement ("Arbitration Agreement"). *Id*., Ex. A at App'x A. Pursuant to that Arbitration Agreement, the parties agreed that "any Covered Claims . . . will be resolved by final and binding arbitration . . . . This Arbitration Agreement applies with respect to all Covered Claims, whether initiated by Employee or UBS." *Id*. § a. Covered Claims under the Arbitration Agreement include "any and all claims or disputes between Employee and UBS . . . arising out of or in any way relating to Employee's employment, compensation, benefits and terms and conditions of employment with UBS . . . or the termination thereof, including but not limited to contract, tort . . . wage and hour claims . . . claims arising under or relating to . . . any other federal, state or local wage and hour, compensation, benefits, or discrimination law." *Id*. § b. Pursuant to the Arbitration Agreement, the parties agreed to pursue any claims on an individual basis only and waive any rights to pursue claims on a class-wide basis:

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EMPLOYEE AND UBS AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A CLASS ACTION BASIS . . . EITHER IN COURT OR IN ARBITRATION, AND THAT EMPLOYEE IS NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE[.]

2

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

*Id*. § d.

Ignoring his express agreement to arbitrate, Plaintiff filed this putative class action against UBS on August 30, 2016. ECF No. 1. Plaintiff alleges four claims against UBS that are Covered Claims under the Arbitration Agreement: for unlawful pay deductions; failure to reimburse reasonable and necessary business expenses; failure to provide accurate itemized wage statements; and failure to timely pay wages at termination. *Id*. at ¶ 2.[1]

## ARGUMENT

**A.     The Federal Arbitration Act Requires Arbitration in This Case.**

The Federal Arbitration Act ("FAA") provides that any agreement within its scope "shall be valid, irrevocable, and enforceable." *See* 9 U.S.C. § 2; *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344. To accomplish this objective, the FAA permits a party aggrieved by the refusal of another to arbitrate under a written arbitration agreement to petition a district court for an order compelling arbitration in the manner provided by the agreement. *See* 9 U.S.C. § 4; *Concepcion*, 563 U.S. at 344. Defendant respectfully requests such an order here.

   **1.     The FAA Applies Here.**

As the United States Supreme Court has repeatedly and consistently affirmed, the Federal Arbitration Act ("FAA") declares a "liberal federal policy" favoring the enforcement of arbitration agreements. *Concepcion*, 563 U.S. at 346 (internal quotation omitted); *see also DirecTV, Inc. v. Imburgia*, 136 S. Ct. 463, 471 (2015) (admonishing lower court for not giving "'due regard . . . to the federal policy favoring arbitration'") (quoting *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined

---

[1] Sahu and UBS are already arbitrating a dispute under the Promissory Note in a collection action brought by UBS based on Sahu's failure to repay the Promissory Note upon his termination from UBS in accordance with the terms of the note.

3

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

proceedings." *Concepcion*, 563 U.S. at 344. Importantly, "[t]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *see also Imburgia*, 136 S. Ct. at 468 ("[L]ower courts must follow this Court's holding in *Concepcion*" and must enforce arbitration agreements subject to the FAA.).

The Supreme Court has further explained that the FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (the FAA permits parties to "trade[] the procedures . . . of the courtroom for the simplicity, informality, and expedition of arbitration") (internal quotation omitted). To this end, the FAA does not simply place arbitration agreements on equal footing with other contracts; rather, it favors them. *Mortensen v. Bresnan Commc'ns, LLC*, 722 F. 3d 1151, 1160 (9th Cir. 2013).

The Arbitration Agreement here is governed by the FAA, which applies to all agreements "involving commerce." 9 U.S.C. § 2. The term "involving commerce" is broadly construed and applies to any contract affecting interstate commerce to the full extent of Congress's Commerce Clause power. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding requisite commerce for FAA even when individual transaction did not have a substantial effect on commerce); *see also Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 276-77 (1995). Here, Defendant provides banking services across the United States and financial advisors like Plaintiff assist UBS's customers to invest in national and international securities markets. Eisland Decl. ¶ 3. For these reasons, the Arbitration Agreement necessarily "involve[s] commerce." *See Dobson*, 513 U.S. at 276–77; *id.* at 282 (arbitration agreement "involved interstate commerce" where one signatory was a "multistate" company, and some of the materials it used came from out-of-state); *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1099-1102 (C.D. Cal. 2015) (holding FAA applied to arbitration agreement in employment contract where employer engaged in interstate commerce). It is for this reason that the Parties acknowledged in the Arbitration Agreement that it

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

"shall be governed by and interpreted in accordance with the Federal Arbitration Act[.]" *See* Eisland Decl., Ex A at App'x A § a.

### 2. The FAA Requires that the Arbitration Agreement Be Enforced According to Its Terms.

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *Concepcion*, 563 U.S. at 339 (citing *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)). It reflects both the "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *Id*. (internal citations omitted). As the Supreme Court has explained:

> [O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as "embody[ing] [a] national policy favoring arbitration' . . . and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary[.]"

*Id*. at 345-46 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) and *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). "In line with these principles, courts must . . . enforce [arbitration agreements] according to their terms[.]" *Id*. at 339 (citing *Buckeye*, 546 U.S. at 443, and *Volt Info. Sci., Inc*, 489 U.S. at 478-79 (1989)). Those contractual terms must be enforced "notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, 563 U.S. at 346 (internal citations omitted); *see also id.* at 351 ("States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.").[2]

Indeed, because by its very terms the FAA "'leaves no place for the exercise of discretion by a district court,' "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d

---

[2] *Cf. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671-76 (2010); *Concepcion*, 563 US. at 347 ("an arbitration panel exceed[s] its power . . . by imposing class procedures based on policy judgments rather than the arbitration agreement itself . . . ."). In *Stolt-Nielsen*, the Supreme Court held that where an arbitration agreement is governed by the FAA, class wide arbitration is forbidden unless the arbitration agreement expressly permits such actions to proceed. In dismissing the public policy concerns raised by respondent, the *Stolt-Nielsen* court concluded that the parties' agreement governs the outcome of a motion to compel arbitration and that public policy arguments cannot trump that agreement. *Stolt-Nielsen,* 559 U.S. at 673; *id.* at 687.

5

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

1126, 1130 (9th Cir. 2000) (emphasis in original) (quoting *Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 218 (1985)). "The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). As such, the court "shall make an order directing the parties to proceed to arbitration," 9 U.S.C. § 4, upon determination that (1) a valid arbitration agreement exists, and (2) the agreement "encompasses the dispute at issue." *Chiron Corp.,* 207 F.3d at 1130. In its review, this Court "must be cognizant of the [FAA's] federal policy favoring arbitration agreements: 'The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* at 1131 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). Moreover, the Supreme Court has instructed that the "party resisting arbitration bears the burden of proving the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

The record here leaves no doubt that a valid agreement to arbitrate wage and hour disputes on a non-class basis exists and that it encompasses the claims asserted here. Sahu signed the Promissory Note on February 25, 2016. Eisland Decl., Ex. A. And his wage and hour claims under the California Labor Code are indisputably Covered Claims under the Arbitration Agreement to the Promissory Note. *Id*. § a. As such, the FAA requires this Court to enforce the Arbitration Agreement in accordance with its terms. *Chiron Corp.*, 207 F.3d at 1130; *Concepcion*, 563 U.S. at 344.

The Arbitration Agreement's terms prohibit classwide treatment and require that the matter be sent to arbitration. Applying those terms, and to allow the parties to utilize "efficient, streamlined procedures tailored to the type of dispute," this Court should enforce them. *Concepcion*, 563 U.S. at 344-45. The benefits of such an agreement to forgo class-wide arbitration in favor of non-class arbitration were explained by the Supreme Court in *Concepcion*: "[T]he switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." 563 U.S. at 348. For this reason, the Court concluded that class action waivers must be "enforced according to their terms," because "requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and [] creates a scheme inconsistent with the FAA." *Id.* at 344. The class action waiver is valid and enforceable because the execution of the class action waiver was part of a

6

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

loan agreement voluntarily entered into by Plaintiff.  *See*, *e.g., Mohamed v. Uber Techs., Inc.*, --- F.3d ---, 2016 WL 4651409, at n.6 (9th Cir. Sept. 7, 2016) (rejecting argument that class and collective action waivers in arbitration agreements violate the National Labor Relations Act on the grounds that "Uber drivers were not required 'to accept a class-action waiver as a condition of employment'") (quoting *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075 (9th Cir. 2014)); *see also, e.g., Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 364, 373-74 (2014) (holding that the FAA preempts state law invalidating class waivers in employment agreements and rejecting argument that class waivers violated the NLRA).

**B.     The Matter Must Be Stayed While Arbitration Proceeds.**

Section 3 of the FAA requires that a case be stayed until arbitration is complete:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3; *see also Concepcion*, 563 U.S. at 344 (Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'").  Accordingly, this case should be stayed until the completion of arbitration.

**C.     Alternatively, Rule 12(b)(3) Requires Dismissal of Plaintiff's Claims Because He Failed to File Such Claims in an Arbitration Venue.**

In the alternative to compelling arbitration and staying the case pending completion of the arbitration, the Court should dismiss Plaintiff's claims with prejudice for failing to bring the claims in the contractually mandated arbitration forum.  A motion to dismiss premised upon a forum selection clause is properly brought under Federal Rule of Civil Procedure 12(b)(3).  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *see also Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652-56 (9th Cir. 2009) (affirming district court's grant of Rule 12(b)(3) motion, finding that claims were subject to arbitration under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitration Awards); *Auto. Mechs. Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) (noting that the Supreme Court

7

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

has held that arbitration clauses are "a species of forum selection clause" and that the Seventh Circuit has followed the majority rule in using 12(b)(3) as a basis for seeking dismissal on a forum selection clause, including an arbitration clause); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519-20 (1974) (agreement of the parties to arbitrate disputes before the International Chamber of Commerce in Paris, France is to be enforced by the federal courts).  In resolving such motions, "[the] pleadings are not accepted as true," and the court may "consider facts outside of the pleadings." *Id.*

Here, in connection with an optional loan, Plaintiff agreed to mandatory arbitration on a non-class basis and waived his right to have his case heard by a jury: "By entering into this Arbitration Agreement . . . Employee and UBS each acknowledge and agree that, to the fullest extent permitted by law, Employee and UBS are giving up their rights to a jury trial of the Covered Claims."  Eisland Decl., Ex. A at App'x A § a.  The Arbitration Agreement expressly provides that his claims must be brought in arbitration, and that arbitration is the appropriate tribunal for such claims: "[A]ny arbitration of a Covered Claim will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA") . . .  If a Covered Claim may not be arbitrated before FINRA . . . then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS[.]." *Id.* § e.  Because Plaintiff agreed to arbitrate his claims in a particular forum, and because he failed to bring his claims in that forum, venue in any court is not proper, and Plaintiff's claims should be dismissed with prejudice under Rule 12(b)(3) with directions that Plaintiff is required to pursue arbitration of his claims in accordance with the Arbitration Agreements to the extent he chooses to pursue such claims at all.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court grant this Motion and compel non-class arbitration and either stay proceedings pending arbitration or, in the alternative, dismiss the complaint pursuant to Rule 12(b)(3).

Gibson, Dunn & Crutcher LLP

8

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW

| | |
|---|---|
| Dated: September 28, 2016 | Respectfully submitted, |
| | GIBSON, DUNN & CRUTCHER LLP |
| | By: _/s/ Michele L. Maryott_<br>Michele L. Maryott |
| | Attorneys for Defendant<br>UBS FINANCIAL SERVICES INC. |

9

Gibson, Dunn & Crutcher LLP

DEFENDANT UBS FINANCIAL SERVICES INC.'S NOTICE OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PROCEEDINGS – CASE NO. 3:16-CV-04982-JSW